UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DONNA ELLEN SCHULTZ,

                Plaintiff,

v.                                                       1:14-CV-538
                                                         (GTS)
CAROLYN W. COLVIN, Comm'r of Soc. Sec.,

                Defendant.
_____

APPEARANCES:                                       OF COUNSEL:

OLINSKY LAW GROUP                     HOWARD D. OLINSKY, ESQ.
 Counsel for Plaintiff
One Park Place
300 South State Street, Suite 420
Syracuse, NY 13202

U.S. SOCIAL SECURITY ADMIN.         PETER JEWETT, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
 Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

GLENN T. SUDDABY, United States District Judge

## **DECISION and ORDER**

      Currently before the Court, in this Social Security action filed by Donna Ellen Schultz ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-motions for judgment on the pleadings. (Dkt. Nos. 12, 13.) For the reasons set forth below, Defendant's motion is granted and Plaintiff's motion is denied.

I.   RELEVANT BACKGROUND

   A.   Factual Background

Plaintiff was born on December 23, 1951.  She completed a high school level of education.  She worked full time as an administrative assistant, collection's clerk and bus driver.  Generally, her alleged disability consists of sciatica, low back problems and sleep apnea.  Her alleged disability onset date is May 13, 2010, and her date last insured is March 31, 2014.

   B.   Procedural History

On July 27, 2011, Plaintiff applied for Social Security Disability Insurance Benefits ("SSD").  Her application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ").  On October 31, 2012, she appeared before the ALJ, Carl E. Stephan.  (T. 46-69.)  On November 19, 2012 the ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 21-35.)  On December 19, 2012, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (T. 1-6.)  Thereafter, Plaintiff timely sought judicial review in this Court.

   C.   The ALJ's Decision

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law.  (T. 21-35.)  First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date.  (T. 23.)  Second, the ALJ found that Plaintiff had the severe impairments of bilateral knee degenerative joint disease and obesity.  (*Id.*) The ALJ determined that Plaintiff's medically determinable impairments of a back disorder, gastroesophageal reflux, hearing loss, edema, restless

leg syndrome, pre-diabetes, sleep apnea, and anxiety/depression were non-severe impairments. (T. 26.) Third, the ALJ found that Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 27.) The ALJ specifically considered listing 1.00, referable to musculoskeletal disorders. (*Id.*) Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to "perform the full range of sedentary work as defined in 20 CFR § 404.1567(a)." (*Id.*)[1] Fifth, the ALJ found that Plaintiff had past relevant work as an administrative assistant or clerical work and is capable of performing such work. (T. 30.)

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Arguments

Plaintiff makes four separate arguments in support of her motion for judgment on the pleadings. First, Plaintiff argues that the ALJ erred in failing to develop the record, because (a) the ALJ failed to request additional records from Jay L. Rugoff, D.C. and (b) the ALJ failed to re-contact consultative examiner Joseph Prezio, M.D. (Dkt. No. 12 at 9-12 [Pl.'s Mem. of Law].) Second, Plaintiff argues that the ALJ's RFC determination is unsupported by substantial evidence. (*Id.* at 12-16.) Third, Plaintiff argues that the ALJ's credibility determination is not supported by substantial evidence. (*Id.* at 16-19.) Fourth, and lastly, Plaintiff argues that the ALJ's Step Four finding is unsupported by substantial evidence. (*Id.* at 18-20.)

---

[1]  Sedentary work involves lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

### B. Defendant's Arguments

In response, Defendant makes essentially four arguments. First, Defendant argues that the ALJ properly developed the record. (Dkt. No. 13 at 4-5 [Def.'s Mem. of Law].) Second, Defendant argues that the ALJ was not required to recontact Dr. Prezio. (*Id.* at 5-6.) Third, Defendant argues that the ALJ properly determined Plaintiff's RFC. (*Id.* at 6-9.) Fourth, and finally, the Defendant argues that Plaintiff was capable of performing her past relevant work. (*Id.* at 9-10.)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g) and 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or the decision was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct.

1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.   Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 404.1520. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe

5

impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.  Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

## IV. ANALYSIS

### A. Whether the ALJ Failed to Fully Develop the Record

After carefully considering the matter, the Court answers this question in the negative, for the reasons stated in Defendant's memorandum of law.  (Dkt. No. 13, at 4-5 [Def.'s Mem. of Law].) The Court would add the following analysis.

Plaintiff argues that the ALJ failed to develop the record, specifically, that he failed to request treatment notes from Plaintiff's treating chiropractor Dr. Rugoff and that he failed to re-contact consultative examiner Dr. Prezio for clarification of the term "prolonged." Defendant counters that the ALJ properly developed the record regarding Dr. Rugoff and was not required to re-contact Dr. Prezio.

The ALJ has an affirmative duty to develop the record.  *See Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) ("[I]t is the well-established rule in our circuit that the social security ALJ. . . must on behalf of all claimants ... affirmatively develop the record. . . ."

(quoting *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 508-09 [2d Cir.2009]) (internal quotation mark omitted)). This duty exists "[e]ven when a claimant is represented by counsel," due to the "non-adversarial nature of a benefits proceeding." *Moran,* 569 F.3d at 112. (quoting *Lamay*, 562 F.3d at 509). Re-contacting medical providers is necessary when the ALJ cannot make a disability determination based on the evidence of record. *See* 20 C.F.R. § 404.1512(e). However, reviewing courts hold that ALJs are not required to seek additional information absent "obvious gaps" that preclude an informed decision. *Rosa v. Callahan,* 168 F.3d 72, 79 n. 5 (2d Cir. 1999); *see also Hart v. Comm'r of Soc. Sec.,* No. 5:07-CV-1270, 2010 WL 2817479, at *5 (N.D.N.Y. July 10, 2012).

Here, there is substantial evidence in the record upon which the ALJ made his disability determination, and there are no "obvious gaps" in the record that called for a duty to re-contact. The record contains a complete medical history supplied by Plaintiff's primary care providers and a consultative exam upon which the ALJ could base his determination. Further, the medical evidence provided by Dr. Rugoff often refers the reader to Plaintiff's primary care provider because such information was not available through Dr. Rugoff's own records. (T. 301-307.) Therefore, as Dr. Rugoff's own notations imply, his treatment notes and records could not provide additional information and that the reader had to look to Plaintiff's primary physicians for such information.

Plaintiff also argued that the ALJ was bound to re-contact consultative examiner, Dr. Prezio, to clarify the term "prolonged," which Plaintiff claimed is ambiguous. Dr. Prezio opined in a medical source statement that Plaintiff had "mild restriction[s] for

7

prolonged standing, walking, squatting, and kneeling because of the knee compromise noted bilaterally." (T. 319.)

Additional evidence or clarification is sought when there is a conflict or ambiguity that must be resolved, when the medical reports lack necessary information, or when the reports are not based on medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. § 404.1512(e)(1); *Rosa v. Callahan*, 168 F.3d 72, 80 (2d Cir. 1999); *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998).

Here, there is no conflict, nor is the term "prolonged" ambiguous. Dr. Prezio's limitations are supported by his physical examination and observations of Plaintiff. Dr. Prezio's report included a musculoskeletal exam in which he observed full range of motion in the cervical and lumbar spine, full range of motion of the upper extremities, and full range of motion of the lower extremities. (T. 318.) Dr. Prezio observed that Plaintiff's knees where painful to touch; however, they maintained a full range of motion. (*Id.*) Dr. Prezio also noted that Plaintiff had a limited squat due to knee pain and that her gait was waddling with a wide-based walking because of the size of her thighs. (T. 317.) Dr. Prezio's medical source statement is supported by his examination of Plaintiff and therefore, his opinion is neither vague nor ambiguous. *See Stivers v. Colvin*, No. 11-CV-1019, 2013 WL 3327958 (N.D.N.Y. July 2, 2013) (finding that the consultative examiner's opinion that plaintiff should avoid 'prolonged' sitting or standing was supported by his examination results.)

For these reasons, the Court finds that the ALJ was not required to re-contact Dr. Prezio for clarification of the term "prolonged" because Dr. Prezio provided clinical findings and an examination of Plaintiff which supported his medical source statement.

### B. Whether the ALJ's RFC Is Supported by Substantial Evidence

After carefully considering the matter, the Court answers this question in the affirmative, for the reasons stated in Defendant's memorandum of law. (Dkt. No. 13 at 6-9 [Def.'s Mem. of Law].) The Court would add the following analysis.

Plaintiff argues that the ALJ's RFC is not supported by substantial evidence because he failed to provide for the limitations imposed by Plaintiff's chiropractor, whom the ALJ affords "no weight." In essence, Plaintiff argues that the ALJ failed to provide Dr. Rugoff's opinion proper weight.

The ALJ must consider every medical opinion of record. 20 C.F.R. § 404.1527(c). Acceptable medical sources are licensed physicians, psychologist, optometrists, podiatrists and qualified speech language pathologists. 20 C.F.R. § 404.1513(a). Chiropractors, however, are defined as "other sources" whose opinions may be considered with respect to the severity of the claimant's impairment and ability to work, but cannot establish a medically determinable impairment. 20 C.F.R. § 404.1513(d).

The Second Circuit has found that "the ALJ has discretion to determine the appropriate weight to accord the [other source's] opinion based on all the evidence before him." *Diaz v. Shalala,* 59 F.3d 307, 314 (2d Cir. 1995). When evaluating the opinions of other sources, the ALJ may apply the same factors as are used in evaluating the medical opinions of acceptable medical sources. Such factors include the following: "how long the source has known and how frequently the source has seen the individual; how consistent the opinion is with other evidence; the degree to which the source presents relevant evidence to support an opinion; how well the source explains

the opinion; whether the source has a specialty or area of expertise related to the individual's impairment(s); and, any other factors that tend to support or refute the opinion." SSR 06-03p: Titles II and XVI: Considering Opinions and Other Evidence from Sources Who are Not "Acceptable Medical Sources" in Disability Claims, 2006 WL 2329939, at *4 (S.S.A. 2006), *see also Shaw v. Chater,* 221 F.3d 126, 134 (2d Cir.2000); *Clark v. Comm'r of Soc. Sec.,* 143 F.3d 115, 118 (2d Cir.1998). Here, the ALJ correctly applied these factors.

To be sure, an ALJ cannot discredit the opinion of an "other source" solely because it is an "other source." *See Kelly v. Astrue*, 09-CV-1359, 2011 WL 817507, at *6 (N.D.N.Y. Jan., 18, 2011) (holding that the ALJ was not free to simply disregard a licensed clinical social worker's assessment on the basis that he was not an acceptable medical source alone). Although the ALJ does note that Dr. Rugoff is not an acceptable medical source, he does not use this classification as a factor in weighing his opinion. The ALJ discussed Dr. Rugoff's opinion in great detail and concluded that his opinion of Plaintiff's limitations due to back pain were entitled to no weight. The ALJ acknowledged that Dr. Rugoff treated the claimant personally; however, the ALJ afforded his opinion no weight because he did not provide any supportive documentation and his assessments are inconsistent with other treating sources. (T. 25.)

Dr. Rugoff treated Plaintiff for back pain. He supplied three medical source statements and multiple letters describing her limitations due to her back pain; however, the record does not contain any additional treatment notes. In a letter dated September 29, 2008, he stated she would have difficulty sitting and standing for long periods and would require breaks every one to two hours. (T. 313.) In a letter dated December 8,

10

2009, he opined that she would have difficulty standing and bending for long periods due to her back pain and recommended she be accommodated with a stool or chair and a desk. (T. 312.) In another letter dated February 11, 2010, he opined that she had difficulty walking for any length of time. (T. 315.) Dr. Rugoff also supplied three medical source statements. In September 2011, he completed a medical source statement for New York State Disability, opining that Plaintiff had reached maximum medical improvement and only received treatment as needed. (T. 300.) He opined that she had difficulty bending and going from a sitting and/or squatting position to standing. (T. 303.) However, he observed that she had full motor strength in all upper and lower extremities. (T. 302.) He opined that she could occasionally lift and carry 15 pounds; she could stand and/or walk up to six hours a day with frequent breaks to rest; she could sit less than six hours a day; and she could not stoop, crawl, bend or do extreme reaching. (T. 308.)

In a medical source statement completed in December of 2011, Dr. Rugoff opined that Plaintiff could sit for 30 minutes at a time and stand for 20; that she could stand/walk for a total of two hours and sit for about four hours in an eight-hour workday; she needed to shift positions at will; she required several 15-minute breaks; she could frequently lift and carry less than ten pounds and occasionally ten pounds; she could rarely twist; she could never stoop/bend, crouch/squat, or climb ladders; she could occasionally climb stairs. (T. 329-330.) She would be off task for 20 percent of the work day due to pain and she would have good days and bad days. (T. 331.) In a medical source statement dated October of 2012, he opined that she could sit for 30 minutes at a time and stand for 30 minutes at a time; and could stand/walk about two hours and sit

11

about four hours in an eight-hour workday. (T. 355.) He opined that she would require two 10-minute unscheduled breaks during a work day. (*Id.*) She would need to modify her knee bend. (*Id.*) She could occasionally lift and carry ten pounds or less. (T. 356.) She could rarely twist; never stoop/bend, crouch/squat, climb ladders; and could occasionally climb stairs. (*Id.*) She would be off task 20 percent of the workday, would have good days and bad and would be absent more than four days per month. (T. 356-357.)

Other medical evidence in the record simply fails to support Dr. Rugoff's limitations. First, there is no diagnosis of a back impairment or treatment for a back impairment from Plaintiff's treating orthopedist or physician. Dr. Abraham, Plaintiff's treating orthopedist, diagnosed and treated her for morbid obesity and bilateral knee arthritis. (T. 227.) Plaintiff's primary care physician, Dr. Swicker, treated her for complaints of knee pain, anxiety, obesity and sinus problems. (T. 229, 246, 252, 267, 271.) Medical records and treatments notes from Dr. Abraham and Dr. Swicker are essentially void of complaints of back pain or treatment for back pain. Further, Dr. Abraham and Dr. Swicker placed no functional limitations on Plaintiff due to back pain.

Consultative examiner, Dr. Perzio, diagnosed Plaintiff with back pain by history; however, his exam revealed full cervical and lumbar flexion and extension. (T. at 318.) He did observe that Plaintiff had minimal back pain on palpation of right lower paralumber region. (*Id.*) Dr. Perzio ordered medical imaging, which showed moderate scoliosis of the thoracolumbar spine. (T. 320.) The limitations imposed on the Plainitiff by Dr. Rugoff are therefore not supported by the treatment notes and observations of Dr. Abraham, Dr. Swicker and Dr. Prezio.

It is apparent from the decision that the ALJ provided Dr. Rugoff's opinion no weight, not because he is an "other source," but because his limitations are inconsistent with the other medical evidence in the record and because he provided no support for his limitations. For all these reasons, the Court finds that the ALJ did not err in provided Dr. Rugoff's opinion with no weight.

### C. Whether the ALJ properly determined Plaintiff's Credibility

After carefully considering the matter, the Court answers this question in the affirmative, for the reasons stated in Defendant's memorandum of law. (Dkt. No. 13 at 8-9 [Def.'s Mem. of Law].) The Court adds the following analysis.

A plaintiff's allegations of pain and functional limitations are "entitled to great weight where ... it is supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (quoting *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir.1992). However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Montaldo v. Astrue*, 10-CV-6163, 2012 WL 893186, at *17 (S.D.N.Y. Mar. 15 2012). "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

"The ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record. First, the ALJ must determine whether the claimant has medically determinable impairments, which could reasonably be expected to produce the pain or other symptoms alleged." *Id.*, at 271.

> Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work. Because an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, an ALJ will consider the following factors in assessing a claimant's credibility: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.

*Id.*

Here, the ALJ considered Plaintiff's allegations regarding her impairments and functional limitations during the application process and the hearing. Further, he found that her medically determinable impairments could reasonably be expected to cause her alleged symptoms but that her statements regarding the intensity, persistence and limiting effects of her symptoms were not entirely credible "to the extent they are inconsistent with the . . . [RFC] assessment." (T. 28.)

To be sure, although a "claimant's credibility may be questioned if it is inconsistent with the medical evidence . . . , it is improper to question the plaintiff's credibility because it is inconsistent with the RFC determined by the ALJ." *Gehm v. Astrue,* No. 10-CV-1170, 2013 WL 25976, at *5 (N.D.N.Y. Jan. 2, 2013); *see also Patterson v. Astrue,* No. 11-CV-1143, 2013 WL 638617, at *14 (N.D.N.Y. Jan. 24, 2013) ("This assessment of plaintiff's credibility is formed only on the basis of how plaintiff's statements compare to the ALJ's RFC assessment. The ALJ's analysis is therefore

fatally flawed, because, it demonstrates that she improperly arrived at her RFC determination before making her credibility assessment, and engaged in a credibility assessment calculated to conform to that RFC determination."). Instead, the ALJ must consider

> the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which these symptoms limits the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record. This includes the medical signs and laboratory findings, the individual's own statements about the symptoms, any statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record.

20 C.F.R § 404.1529(c)(4)

In finding that Plaintiff's allegations are not entirely credible, the ALJ improperly concluded that her credibility was diminished because her testimony was inconsistent with the RFC;[2] however, despite this language, the ALJ did provide a detailed discussion of Plaintiff's credibility "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

---

[2] Of note, Plaintiff does not allege that the ALJ erred in his credibility evaluation based on his statement that Plaintiff is not credible because her statements are inconsistent with the RFC, but instead that the ALJ "accentuated Plaintiff's functional capabilities and belittled her allegations of disabling limitations." (Dkt. No. 12, at 17 [Pl.'s Mem. Of Law].)

The ALJ's credibility determination included a discussion of the objective medical evidence in the file, Plaintiff's activities of daily living, her testimony, and her limited medical treatment. The ALJ specifically referred to (1) Dr. Swicker's diagnosis of knee pain and obesity, (2) Dr. Abraham's diagnosis of obesity and bilateral knee arthritis. The ALJ stated that both doctors advised Plaintiff to lose weight. (T. 28.) The ALJ noted that Dr. Swicker observed that Plaintiff had a normal range of motion, muscle strength and stability in all extremities. (T. 29.) Dr. Swicker further noted that Plaintiff was noncompliant with her diet and weight loss and declined to see a nutritionist. (*Id.*) The ALJ discussed Dr. Prezio's evaluation and assessment of Plaintiff in detail. (T. 28.) Further, despite Plaintiff's allegations, the ALJ did note Plaintiff's allegation that she used a walker at the mall or if she was going to walk long distances. (T. 28.) Therefore, the ALJ thoroughly discussed Plaintiff's objective medical record in making a credibility determination.

During his credibility assessment, the ALJ reviewed Plaintiff's activities of daily living. Specifically, the ALJ noted that Plaintiff testified that she was able to care for her personal hygiene, dress herself, went grocery shopping using a motorized cart, cooked, enjoyed knitting, enjoyed traveling, went to church, went to the casino, and frequently went out to dinner with her husband. (T. 29.) The ALJ noted that Plaintiff did not seek ongoing treatment for her knee pain and that over-the-counter medication helped her pain. (T. 29.) The ALJ also referred to Plaintiff's testimony that she stopped working due to falling asleep on the job; however, he noted that her sleep apnea has been successfully treated since then. (*Id.*)

The Court finds that the ALJ properly evaluated Plaintiff's credibility; further, the Court is mindful that the ALJ is "free to accept or reject testimony like that given by [Plaintiff]." *See Williams*, 859 F.2d at 260 ("As a fact-finder, an ALJ is free to accept or reject testimony . . . ."). For all these reasons, the Court finds that, despite his faulty language, the ALJ credibility determination was proper, and remand is not necessary on this basis.

### D. Whether the ALJ's Step Four Finding Is Supported by Substantial Evidence

After carefully considering the matter, the Court answers this question in the affirmative, for the reasons stated in Defendant's memorandum of law. (Dkt. No. 13, at 9-10 [Def.'s Mem. of Law].) The Court adds the following analysis.

At Step Four of the sequential evaluation process for determining whether an individual is disabled, an ALJ must determine whether the plaintiff has the RFC to perform the requirements of his past relevant work. 20 C.F.R. § 404.1520(f). The term past relevant work is defined as "work that [the claimant] has done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it. 20 C.F.R. § 404.1560(b)(1). A claimant will be found not disabled if it is determined that he has the RFC to perform: "1. The actual functional demands and job duties of a particular past relevant job; or 2. The functional demands and job duties of the occupation as generally required by employers throughout the national economy." SSR 82-61"Titles II and XVI: Past Relevant Work-The Particular Job or the Occupation as Generally Performed." *Jock v. Harris,* 651 F.2d 133, 135 (2d Cir. 1981) (noting that

"the claimant has the burden to show an inability to return to her previous specific job and an inability to perform her past relevant work generally").

  Here, the ALJ's determination that Plaintiff could return to her past relevant work as an administrative assistant or clerical worker is supported by substantial evidence, because he relied on evidence in the record and Plaintiff's testimony. Plaintiff completed a Work History Report (Form SSA-3369) detailing the exertional and non-exertional demands of her past work as an administrative assistant and reception. (T. 146-155, 168-175.) Plaintiff worked as an administrative assistant from 2001-2010. (T. 146.) She described her duties as "answer[ing] telephones, enter[ing] data with a computer, fil[ing], [and] greet[ing] clients." (T. 169.) She further stated she did not use machines, tools or equipment; did not use technical knowledge or skills; and did write, complete reports or perform duties like that. (*Id.*) She stated that she sat for eight hours total in a workday and wrote/typed/or handled small objects for eight hours total in a workday. (*Id.*) She stated that the heaviest weight she lifted was less than ten pounds and frequently lifted less than ten pounds. (*Id.*) She was not a supervisor. (*Id.*) Plaintiff also completed a description of her position as a receptionist. She described her job as taking calls, greeting clients and light clerical duties. (T. 173.) As with her administrative position, she stated that she did not have to use machines, tools or equipment; she did not use technical knowledge or skills; and did have to write, complete reports, or perform duties like that. (*Id.*) She sat for eight hours total each day and wrote/typed or handled small objects for eight hours total each day. (*Id.*) She stated that the heaviest weight she lifted was less than ten pounds and frequently lifted less than ten pounds. (*Id.*) Again, she stated she was not a supervisor. (*Id.*)

Plaintiff's allegation that the ALJ did not adequately inquire into the demands of her past relevant work, specifically regarding "detailed information about strength, endurance, manipulative ability, mental demands" is simply not true. Plaintiff supplied a detailed account of her physical duties as an administrative assistant and receptionist in her application for benefits. The ALJ did not place any mental limitations on her ability to perform a full range of sedentary work; therefore, a more detailed inquiry into the mental demands of her past relevant work is unnecessary. Plaintiff did not argue that the ALJ erred in his Step Two assessment of her mental impairments, nor did she argue that the ALJ erred in his assessment of her mental impairments elsewhere in his decision. The Plaintiff relies on *Wood-Montroe v. Asture*, 05-CV-1570, 2008 WL 4283412 (N.D.N.Y. Sept. 16, 2008), in her request for remand. However, in that case, unlike the one before us, the ALJ failed to adequately inquire into the mental demands of plaintiff's past relevant work where the she had a severe impairment of depression which affected her ability to perform a full range of light work and, as such, the case was properly remanded.

For all these reasons, the Court finds that, the ALJ's Step Four determination that Plaintiff can perform her past relevant work is supported by substantial evidence.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 12) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 13) is **GRANTED**; and it is further

**ORDERED** that Defendant's decision denying disability benefits is **AFFIRMED**;

and it is further is

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: May 13, 2015
Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge